**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NUMBER |
| **Leah Ashley McCollum** | **16-10904** |
| Debtor | Chapter 13 |

## MEMORANDUM IN RESPONSE TO TRUSTEE'S OBJECTION TO EXEMPTION AND OBJECTION TO MOTION FOR TURNOVER

Comes now **Leah Ashley McCollum** ("Debtor"), and hereby contests the chapter 7 trustee's ("Trustee") Objection to Claimed Exemptions for Amended Schedule C and Motion for Turnover (the "Objection"). Debtor would respectfully show as follows:

### Summary of Argument

Trustee has objected to Debtor's claim of an exemption for Debtor's wedding ring on the basis that the market value of the ring exceeds $5,000. Debtor's exemption is properly claimed under the relevant statute because the value of the ring to Debtor was less than $5,000 at the time of filing due to the existence of a senior perfected security interest. Debtor seeks an overruling of trustee's Objection and a denial of trustee's Motion for Turnover. Furthermore, Trustee improperly seized the subject ring at Debtor's §341 meeting of creditors without overcoming Debtor's claimed exemption. Debtor's ring should be immediately returned.

### 1st Heritage Credit's Security Interest

1. Trustee, in his Objection, engages in a detailed discussion of the vendor's privileges provided by Louisiana law. While informative, this discussion is entirely irrelevant. Debtor has not asserted, nor does she assert now, that 1st Heritage Credit (1st Heritage") is a vendor or maintains a vendor's privilege in Debtor's wedding ring. Rather, 1st Heritage is a purchase money lender who holds a perfected and enforceable purchase money security interest

(“PMSI”) in the ring which is senior to any claim of the Trustee or bankruptcy estate, as is more fully set forth below.

2. A PMSI in consumer goods perfects automatically when it attaches. La. R.S. 10:9-309(1).

3. Consumer goods are goods that are used or bought for use primarily for personal, family, or household purposes. LA R.S. 10:9-102(a)(23).

4. A security interest attaches and is enforceable when (1) value has been given for the security interest; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. La R.S. 10:9-203.

5. Value for purposes of attachment has been given if a security interest is acquired in return for a binding commitment to extend credit or for the extension of immediately available credit. La R.S. 10:1-204.

6. A security agreement is an agreement that creates or provides a security interest. La R.S. 10:9-102(74). A debtor authenticates a security agreement by signing the agreement. La. R.S. 10:9-102(7)(A).

7. On February 4, 2016, George Beck purchased and took possession of the subject ring from Lockhart Jewelers. (Exhibit A).

8. The ring was to be used for the personal purpose of proposing marriage to Debtor, therefore, it qualifies as consumer goods. La R.S. 10:9-102(a)(23).

9. Mr. Beck financed a portion of the purchase price, $6,500, through an extension of credit from 1st Heritage. (Exhibit A).

10. In exchange for this extension of credit, Mr. Beck executed a Promissory Note and Security Agreement granting 1st Heritage a security interest in the ring, which is described in the agreement as "14wg 2.15ct oval diamond engagement ring". The finance charges on the 1st Heritage debt were $1,747.84. (Exhibit B).

11. Mr. Beck authenticated this agreement by signature on February 4, 2016. (Exhibit B).

12. In summation, on February 4, 2016, 1st Heritage extended credit to Mr. Beck in exchange for security rights in the ring, Mr. Beck obtained possession and ownership rights in the ring, and Mr. Beck authenticated a security agreement granting security interest in the ring to 1st Heritage. Therefore, as of February 4, 2016, 1st Heritage held a PMSI in the ring which was perfected by attachment.

13. In general, conflicting perfected security interests in the same collateral rank according to priority in time of filing or perfection. La R.S. 10:9-322(a)(1).

14. In addition, a perfected PMSI in goods other than inventory or livestock has priority over a conflicting security interest in the same goods. La R.S. 10:9-324(a). Furthermore, a perfected security interest in its identifiable proceeds also has priority, if the PMSI is perfected when the debtor receives possession of the collateral or within twenty days thereafter. La R.S. 10:9-324(a).

15. A bankruptcy trustee becomes a lien creditor on the date of filing of the bankruptcy petition. La. R.S. 10:9-102(52)(C).

16. A lien creditor's rights are subordinate to a security interest that was perfected before the lien creditor obtained lien creditor status. La. R.S. 10:9-317(a)(2)(A).

17. 1st Heritage's PMSI was perfected on February 4, 2016. Debtor's bankruptcy petition was filed on June 1, 2016.

18. 1st Heritage's PMSI was perfected before the trustee became a lien creditor, therefore, the trustee's rights in the ring are subordinate to those of 1st Heritage.

19. 11 USC § 725 authorizes the trustee, after notice and a hearing, to dispose of property in which an entity other than the estate has an interest, such as 1st Heritage's perfected PMSI. The legislative notes to §725 provide that the purpose of this section, in part, is to give the court appropriate authority to ensure that collateral or its proceeds is returned to the appropriate secured creditor.

20. If Trustee were authorized to sell the ring, which authorization Debtor maintains would not be proper, 1st Heritage, as senior lienholder, would be entitled to priority payment in full satisfaction of Mr. Beck's debt from the sale proceeds before any funds could be distributed to Debtor's creditors.

21. Debtor agrees with Trustee that exemptions should be evaluated based on a "snapshot" of Debtor's property as of the petition date.

22. As of Debtor's petition date, the balance due on Mr. Beck's debt with 1st Heritage which was secured by the ring was $7,216.23. (Exhibit C).

23. Trustee has not contested Debtor's valuation of the ring at $9,800.00. As of the petition date, the value of the ring to Debtor, based on this valuation, was **$2,583.77** (9,800.00 - $7,216.23).

**Ambiguity in La R.S. 13:3881(A)(5) Should Construed Consistently With Other Exemptions**

24. Although not explicitly stated, Trustee's objection to Debtor's claimed exemption is implicitly premised on the position that La. R.S. 13:3881(A)(5) is unambiguous and susceptible to only a single reasonable interpretation. Debtor disagrees with this position. Ambiguity exists within the relevant statutory language, and Louisiana's laws regarding construction of ambiguous statutory language support Debtor's proposed interpretation.

25. At issue is the meaning of the term "value" in La. R.S. 13:3881(A)(5), which provides:

> The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever, except as otherwise herein provided:
>
> (5) Any wedding or engagement rings worn by either spouse, provided the value of the ring does not exceed five thousand dollars.

26. Trustee attempts to support his argument by citing a case which found that the term "spouse" as used in La. R.S. 13:3881(A)(5), was unambiguous. Debtor's position as a

"spouse" at the time of filing is not at issue in this case. Trustee offers no caselaw that has interpreted the meaning of the term "value" within the context of La R.S. 13:3881(A)(5), and Debtor has been similarly unsuccessful in finding Louisiana jurisprudence dealing with this issue.

27. Louisiana Civil Code Article 10 provides:

> When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.

28. The Louisiana Supreme Court has interpreted article 10 to mean that when statutory language is ambiguous, it must be interpreted as having the meaning which best conforms with the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. *Rando v. Anco Insulations Inc.*, 16 So.3d 1065, 1075 (La., 2009).

29. Moreover, the U.S. District Court for the Western District of Louisiana, in construing Article 644 of the Louisiana Code of Practice (the predecessor to La. R.S. 13:3881) stated "[i]t is generally held that laws granting such exemptions should be liberally construed in favor of the claimants." *In re Trotter*, 97 F.Supp. 249, 250 (W.D. La., 1951)

30. Finally, "whenever a claim to exemption under 13:3881 can be brought within the purpose and intent of section 13:3881 by a fair and reasonable interpretation, the exemption will be allowed." *In re Brown*, 189 B.R. 653, 660 (Bankr. M. D. La., 1996); citing *Young v. Geter*, 185 La. 709 (1936).

31. Again, Trustee asserts that the plain meaning of the statute must be applied, but does not explicitly propose any definition of "value". Instead, he simply makes the bald assertion that the ring should be non-exempt because it is "worth" more than $5,000, implying that the legislature intended "value" as used in the statute to equate to some measure of market value. However, Trustee offers no support for this definition of "value".

32. Debtor contends that the term "value" as used in La. R.S. 13:3881(A)(5) is susceptible to more than one meaning, and should be interpreted not as market value, but as the value to the debtor, or alternatively, potential value to the estate.

33. At the time of filing of Debtor's bankruptcy petition, the ring was encumbered by a perfected security interest in the amount of $7,216.23. Therefore the value to Debtor, or the potential value to the estate, is properly calculated as the fair market value of the ring on the day of filing, less $7,216.23. Under this calculation, the value to the debtor on the day of filing was **$2,583.77**. Since the value to the debtor was less than $5,000.00, the exemption was properly claimed.

## Trustee's Proposed Construction of La R.S. 13:3881(A)(5) Would Lead to Absurd Consequences

34. Regardless of the definition of "value" that the Court chooses to recognize, Trustee's proposed interpretation of La R.S. 13:3881(A)(5) would lead to absurd consequences and is, therefore, improper under Louisiana's laws of statutory construction.

35. La. Civil Code Article 9 provides:

> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.

36. Trustee has taken the position that La R.S. 13:3881(A)(5) should be applied to render the entirety of any ring valued at more than $5,000.00 non-exempt. Such an application would lead to arbitrarily disparate treatments of similarly situated debtors. Consider the following hypothetical: Debtor 1 and Debtor 2 have identical rings. Each ring undergoes an appraisal at the request of a chapter 7 trustee. Debtor 1's ring is valued at $4,999.00, while Debtor 2's ring is valued at $5,001.00. A deviation of $2.00 is surely within the margin of error inherent to the valuation process. Under Trustee's proposed application, Debtor 1 would keep her ring as exempt property, while Debtor 2 would lose her ring and any proceeds derived therefrom as non-exempt.

37. Every other exemption listed in La R.S. 13:3881 provides for a debtor to retain items of value, either in their entirety or up to a stated maximum. Read in this context, and with the absurd consequences that flow from Trustee's proposed application, Debtor submits that if the Court does find that the ring is non-exempt due to its market value, Debtor is entitled to up to $5,000.00 in proceeds from its sale after satisfaction of 1st Heritage's interest and before any distribution is made to creditors of Debtor.

**<u>Counter-Motion for Turnover</u>**

38. Debtor's §341 meeting of creditors was conducted on August 11, 2016.

39. At this meeting, Trustee requested that Debtor remove her engagement ring and provide it to him for inspection. Debtor complied with this request.

40. After gaining possession of the ring, Trustee informed Debtor that he would keep the ring and issue Debtor a receipt. Trustee issued a receipt for the ring. (Exhibit D)

41. At the time of Trustee's seizure of the ring, Debtor had properly claimed the ring as exempt. Trustee had not overcome this claimed exemption as the hearing on Trustee's objection to the claimed exemption is scheduled for August 30, 2016. Therefore, Trustee's seizure of the ring was improper and the ring should be immediately returned to Debtor.

## **Conclusion**

Debtor's ring was properly claimed as exempt because the value to Debtor at the time of filing was less than $5,000.00 due to a perfected PMSI held by 1st Heritage credit. In the alternative, should Trustee be allowed to sell the ring, Debtor is entitled to be paid up to $5,000.00 after 1st Heritage is paid in full and before any distribution of sale proceeds to creditors takes place.

WHEREFORE, DEBTOR PRAYS that Trustee's Objection to Claimed Exemptions for Amended Schedule C and Motion for Turnover be denied and that the Court declare the above-referenced property exempt from seizure pursuant to La. R.S. 13:3881(A)(5) and order its immediate return to Debtor. Debtor further prays for all additional relief available under the law.

Dated: August 22, 2016

Respectfully Submitted,

_/s/ Ryan B. Brown_

Robert W. Cook, #20761
Kelli R. Cook, #32401
Michele S. Cook, #33531
Kent Gill, #06165
Ryan B. Brown, #36399

## CERTIFICATE OF SERVICE

I hereby certify that on **August 22, 2016** a copy of the foregoing **Memorandum in Response to Trustee's Objection to Exemption and Objection to Motion for Turnover** was served on the following registered ECF participants, electronically through the court's ECF System at the email address registered with the court:

John Hodge
Chapter 7 Trustee
P.O. Box 13
Shreveport, LA 71161-0013

U.S. Trustee
300 Fannin St., Ste. 3196
Shreveport, LA 71101

And on the following by ordinary U.S. Mail addressed to:

First Heritage Credit
8939 Jewella Ave., Suite 100
Shreveport, LA 71118

/s/ Ryan B. Brown
Ryan B. Brown